ROLLINS, GUARDIAN, ETC., v. McHATTON, ADM'X, ETC.

1. INSURANCE CERTIFICATE — CHANGING BENEFICIARY.— The power to change the beneficiary named in an insurance certificate issued by a benefit society is conferred upon a member by the charter or by-laws. In the present case such power was also expressly recognized by the contract of insurance.

2. DEATH OF BENEFICIARY BEFORE ASSURED.— If the beneficiary named dies before the assured, no interest in the fund vests in such beneficiary, and her surviving son inherits no part thereof by virtue of his relationship.

3. MANNER OF CHANGING BENEFICIARY.— Where the manner of changing the beneficiary is specified in the contract, compliance with the procedure prescribed is essential to the substitution.

4. WHEN RECORD ENTRY ESSENTIAL TO CHANGE.— If the contract declares that the substitution is to be made "by change of beneficiary entered upon the record of the supreme secretary, * * *" the mere manual delivery of the certificate by the assured to another, with oral suggestions in relation thereto, does not perfect the change in question.

5. WHEN EQUITY WILL TREAT SUBSTITUTION AS COMPLETE.— If the assured has in good faith done his part towards perfecting the substitution in accordance with the method prescribed, but, owing to circumstances over which he has no control, the change is not entirely consummated at the time of his death, equity will sometimes treat the substitution as complete.

6. INSURED HAS NO INTEREST IN FUND.— The insured member of benefit societies has himself no interest in the fund. He possesses simply a power of appointment, which if not exercised becomes inoperative.

7. FUND NOT ASSETS OF INSURED'S ESTATE. — The insurance money does not in any event become assets of the insured's estate. And by statute it is expressly provided that this fund shall not be used for the payment of his debts.

*Appeal from District Court of Arapahoe County.*

CHARLES K. McHATTON during his life-time held a certificate of membership in the Endowment Rank of the Order of Knights of Pythias. This certificate was also in effect a policy of insurance, the amount of the risk being $3,000. The following extract therefrom is deemed sufficient for a proper understanding of the case:

"And in consideration of the payment hereafter to the said Endowment Rank of all monthly payments as required, and the full compliance with all the laws governing this rank now in force or that may hereafter be enacted, and (if he) shall be in good standing under said laws, the sum of three thousand dollars ($3,000) will be paid by the Supreme Lodge, Knights of Pythias of the World, to Mattie E. McHatton, wife, as directed by the said brother in his application, or to such other person or persons as he may subsequently direct by change of beneficiary entered upon the record of the supreme secretary of the Endowment Rank, upon due notice and proof of death and good standing in the rank at the time of death, and surrender of this certificate."

Mattie E. McHatton, wife of the said Charles, died before her husband. During her life-time the certificate was kept in her possession; after her death it passed into the custody of her mother, where it remained until the year 1887, when Charles procured it and delivered it to R. P. Rollins, guardian of Thomas S., the minor son of himself and Mattie E., with instructions to hold it for the benefit of said son. It remained in the possession of Rollins until deposited in the county court after the death of Charles, in obedience to an order of that tribunal.

Charles afterwards married appellee, Frances A. McHatton, but died without making any other or further disposition of the certificate. No indorsement showing a change of beneficiary upon the "record of the supreme secretary of the Endowment Rank" was made or attempted at the

time of the delivery of the certificate to Rollins, or at any date subsequent thereto.

Charles complied with the requirements of his contract in relation to assessments and dues, and at his death was a member in good standing. The association, being in doubt as to whom the money belonged, deposited it in the county court where the estate of Charles was being administered upon, with the request that the court make such distribution thereof as the law required under the contract and existing circumstances. From the order of distribution made in the county court an appeal was taken to the district court, where judgment was entered upon an agreed statement of facts, dividing the money equally between the surviving widow and son. To review that judgment the present appeal was taken by the guardian aforesaid.

Mr. E. Caypless and Messrs. Keeler & Sales, for appellant.

Mr. S. T. Horn and Mr. T. E. Barnum, for appellee.

Chief Justice Helm delivered the opinion of the court.

No doubt exists as to the authority of McHatton to change the beneficiary named in the insurance certificate under consideration. Aside from the fact that this power is conferred upon the member by the charters or by-laws of benefit societies, the present contract contains a provision expressly authorizing the same. It declares that upon the death of the assured the sum mentioned will be paid " to Mattie E., wife, as directed by the said brother in his application, *or to such person or persons as he may subsequently direct* by change of beneficiary entered upon the record of the supreme secretary of the Endowment Rank. * * * "

Appellant asserts that the entire amount called for by the certificate belongs to the son, and that appellee, the surviving widow, takes nothing.

Mattie E., the beneficiary named in the certificate, hav-.

ing died before the assured, no interest in the fund provided for ever vested in her. Thomas S., her surviving son and heir, could, therefore, have inherited no part thereof by virtue of such relationship.

But appellant confidently relies upon the proposition that the delivery of the certificate to him for the use of the son constituted a sufficient change of beneficiary to vest in the son, immediately upon the father's decease, a right to the money. Upon this contention the principal controversy rests. Were the certificate silent as to the manner in which such substitutions are to be made, there might be room for appellant's contention. But turning to the extract above given, we discover that other persons than the one originally named can receive the bequest only upon direction of the assured " by change of beneficiary entered upon the record of the supreme secretary. * * *" This provision thus plainly declares how another person may be substituted in place of the one first designated. The language used is too plain to be misunderstood, and we are not at liberty to supply new words or to ignore the clear import of those employed by the contracting parties. The intent to permit a change of beneficiary at the will of the assured is no more plainly declared by the preceding clause than is the manner of executing that intent by the expression under consideration. The resolution to substitute can be enforced in but one way, viz., "by change of beneficiary entered upon the record," etc. It will not do to say that the entry upon the record is directory merely, or that it is of no special importance. This entry is an essential part of the substitution, and the change is incomplete until it is made. Bacon's Benefit Societies, etc., sec. 307; *Holland v. Taylor*, 111 Ind. 121; *Daniels v. Pratt*, 143 Mass. 216; *National Mut. Aid Society v. Lupold*, 101 Pa. St. 111; *Stephenson v. Stephenson*, 64 Iowa, 534; *Coleman v. Knights of Honor*, 18 Mo. App. 189; *Kentucky M. M. L. Ins. Co. v. Miller, Adm'r*, 13 Bush, 489; *Eastman v. Provident M. R. Ass'n*, 62 N. H. 555; *Hellenberg v. District No. 1 of I. O. of B. B.*, 94 N. Y. 580.

The delivery of the certificate to appellant by McHatton was no compliance with the mode prescribed for effectuating a change of beneficiary. While it may be indicative of the intent of McHatton at the time, it was not the method agreed upon for the declaration of that intent.

We cannot accept the view that this provision was inserted in the certificate exclusively for the protection of the association. It is doubtless a matter of importance to such societies that their books show all changes in this respect. But it is more important to the assured that some record of the kind be kept in order that his wishes in the premises may not, after his death, be defeated. And obviously the beneficiary is profoundly interested in having such definite and reliable record evidence of his ownership. It would be a dangerous precedent were we to hold that the designation of the change of beneficiary by entry upon the books of the company is not imperative. Disregard of the prescribed mode of substitution would tend to frustrate the wise and benevolent object to which these societies owe their existence. And if such changes could be made simply by delivery of the certificate, accompanied with oral declarations, any relative or dependent who might become possessed of the instrument would have it in his power to nullify the purpose of the deceased donor and deprive the true donee of the bequest. If McHatton desired to have his son receive all of the insurance fund, notwithstanding his remarriage, it was only necessary for him to comply with the plain language of the certificate. His failure in this regard, coupled with the decease of the beneficiary named, left the fund without any designated owner.

Equity occasionally aids an attempted but uncompleted change of beneficiary. If the assured has done his part towards perfecting the substitution in accordance with the method prescribed, but owing to circumstances over which he has no control the change is not entirely consummated at the time of his death, equity will sometimes treat the substitution as complete. Bacon's Benefit Societies, etc., secs.

309, 310, and cases. But it is an essential prerequisite to the interposition of equity that the assured has in good faith attempted to comply with the prescribed mode of substitution. McHatton made no effort to do this. It does not appear that he communicated, orally or in writing, to the secretary or to any other officer of the association, a desire to have the proceeds from the risk paid to his son; or that he otherwise sought to secure the proper entry in the association's books.

We are not called upon to consider what the result would have been had the society upon McHatton's decease refused payment, and asserted a right to the reversion. Bacon's Benefit Societies, sec. 243. For while it declined to give either of the claimants preference, it voluntarily deposited the money with the court to be awarded to them as equity and the law might direct. It is not a party to the present record, and no further notice will be taken of any possible interest it might have possessed.

Did the court below, under all the circumstances above detailed, err in refusing to award appellant, for the use of the son, the entire proceeds from the certificate?

The insured member of such societies has himself no interest in the fund; he possesses simply a power of appointment, which if not exercised becomes inoperative. *Hellenberg v. Dist. No. 1, supra;* Bacon's Benefit Societies, sec. 243, *supra.* It would seem to follow that the insurance money could not in any event become assets of the insured's estate. *Eastman v. P. M. R. Ass'n, supra; Worley v. N. W. N. A. Ass'n,* 3 McCrary, 53. That it cannot be used for the payment of his debts is stipulated in the agreed statement of facts and declared by express legislative enactment. Mills' Annotated Stats., sec. 2246. The argument of counsel tends to show that the constitution adopted by the benefit association of which McHatton was a member designates how the fund shall be distributed among the assured's relatives in cases like the present, where upon his death there is no specified beneficiary. But since this con-

stitutional provision is not a part of the record before us, we cannot be guided by its direction.

It is unnecessary, however, to rest our decision upon either the statute of descents and distributions or the constitution of the association. Appellant, as guardian, recovered as much as would have belonged to the son were this constitution or statute applicable; and it is apparent from what we have said, that in the absence of some statute, by-law or contract touching the subject, he is not entitled to more. The apportionment of the fund in question made by the district court is eminently fair, and cannot be disturbed at the instance of appellant.

The judgment is affirmed.

*Affirmed.*